# United States Court of Appeals

*for the*

# Seventh Circuit

Case No. 25-2905

JOHN ELLIOTT, *et al.*,

*Plaintiffs-Appellants,*

– v. –

TREMPEALEAU COUNTY, *et al.*,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN IN NO. 2:25-CV-00421-SCD,
HONORABLE STEPHEN C. DRIES, JUDGE PRESIDING

**REPLY BRIEF OF PLAINTIFFS-APPELLANTS
JOHN ELLIOTT, DARLENE ELLIOTT, STEVEN SKARBAN,
FRANK J. HOMOLA LIVING TRUST DATED
DECEMBER 18, 2009 AND CARL GEIB**

PAUL W. ZIMMER
ZIMMER & RENS LLC
15850 West Bluemound Road,
  Suite 204
Brookfield, Wisconsin 53005
(414) 296-6225

LELAND BELEW
MILBERG PLLC
227 West Monroe Street, Suite 2100
Chicago, Illinois 60606
(865) 412-2700

*Attorneys for Plaintiffs-Appellants John Elliott,
Darlene Elliott, Steven Skarban, Frank J. Homola Living
Trust Dated December 18, 2009 and Carl Geib*

CP COUNSEL PRESS    (800) 4-APPEAL • (625069)

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................iii

ARGUMENT ....................................................................................... 1

    I.    The District Court Erred by Declining to Abstain from Deciding Plaintiffs' Federal Takings Claim Before Determining Whether Plaintiffs had a State-Law Vehicle to Vindicate their Rights ..................................... 1

        A.    *DeVillier*'s Logic Supports Abstention Here .................. 1

        B.    Now and at the Time of Dismissal, a Parallel State Proceeding Existed ................................................. 3

        C.    Plaintiffs Did Not Ask the Federal Court to Abdicate Jurisdiction Over the Federal Claim .............. 4

        D.    *Knick* Does Not Foreclose Abstention ........................... 5

        E.    *Hawaii Housing Authority* and *Examining Board* are Distinguishable ............................................. 5

    II.    Plaintiffs Have a Direct Cause of Action Under the Federal Takings Clause Even If § 1983 Is Time-Barred or Otherwise Unavailable ........................................ 8

        A.    The District Court Erred by Interpreting Plaintiffs' Claim as a § 1983 Claim ............................... 8

        B.    Suing Directly Under the Takings Clause is Available if § 1983 Is Unavailable to Plaintiffs ............. 9

        C.    *Fulton* Supports Plaintiffs' Position ........................... 10

        D.    *DeVillier* Did Not Foreclose a Direct Cause of Action ......................................................................... 12

        E.    The Counties' Reliance on *Smith v. Kentucky* and *Newman* Is Misplaced ......................................... 12

III. The Three-Year Statute of Limitations for § 1983 Claims Does Not Apply to Plaintiffs' Direct Cause of Action Under the Takings Clause .......................... 13

    A. The § 1983 Limitations Period Does Not Govern a Direct Takings Clause Claim .................................. 13

    B. Wis. Stat. § 893.93(1m) Does Not Apply ..................... 15

    C. Plaintiffs' Accrual Argument Is Not New .................... 15

    D. Plaintiffs Retain an Interest in Their Surplus Proceeds, and the Taking Is Temporary and Ongoing ........................................................................ 17

    E. *Howard v. Macomb County* Is Distinguishable ........... 20

IV. Sovereign Immunity Does Not Bar Plaintiffs' Federal Takings Claim Against the State .......................................... 21

    A. The Takings Clause Is a Self-Executing Waiver of Sovereign Immunity under Wisconsin Law ............ 22

    B. The Federal Takings Clause Is Also a Self-Executing Waiver of Sovereign Immunity for Claims Brought Directly Under the Fifth Amendment ................................................................... 22

    C. The State Has Not Identified Any Available Procedure for Plaintiffs to Recover Their Surplus Funds ............................................................... 23

V. Plaintiffs Have Stated Claims Against the State of Wisconsin ................................................................................ 26

VI. The Juridical Link Doctrine Applies .................................... 28

CONCLUSION ........................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Andrews v. Heinold Commodities, Inc.,*
771 F.2d 184 (7th Cir. 1985) ................................................................. 14

*Bieneman v. Chicago,*
864 F.2d 468 (7th Cir. 1988) ....................................................... 8, 14, 15

*Chicago, B. & Q.R. Co. v. City of Chicago,*
166 U.S. 226 (1897)................................................................................ 21

*Colo. River Water Conservation Dist. v. United States,*
424 U.S. 800 (1976)................................................................................. 4

*DeVillier v. Texas,*
601 U.S. 285 (2024)........................................................................*passim*

*Examining Bd. of Eng'rs, Architects and Surveyors v. Flores de Otero,*
426 U.S. 572 (1976)................................................................................. 6

*Fazio v. Dep't of Emple. Tr. Funds,*
645 N.W.2d 618 (Wis. Ct. App. 2002) ............................................. 22, 26

*First English Evangelical Lutheran Church of Glendale v.*
*County of Los Angeles,*
482 U.S. 304 (1987)................................................................................ 23

*Fox v. Saginaw Cty., Michigan,*
67 F.4th 284 (6th Cir. 2023)................................................................... 30

*Fulton v. Fulton County Board of Commissioners,*
148 F.4th 1242 (11th Cir.).............................................................*passim*

*Hawaii Housing Authority v. Midkiff,*
467 U.S. 229 (1984)................................................................................. 5

*Howard v. Macomb County,*
133 F.4th 566 (6th Cir. 2025)..................................................... 18, 20, 21

*In re Estate of Fischer,*
126 N.W.2d 596 (Wis. 1964).................................................................. 19

*Jackson Cty. v. State Dep't of Nat. Res.,*
717 N.W.2d 713 (Wis. 2006).................................................................. 27

*Jensen v. County of Kenosha,*
No. 2021AP1212, 2022 Wisc. App. LEXIS 567
(Wis. Ct. App. June 29, 2022) ................................................. 16, 17, 21, 26

*Knick v. Twp. Of Scott,*
588 U.S. 180 (2019) ....................................................... 1, 5, 23

*La Mar v. H & B Novelty & Loan Co.,*
489 F.2d 461 (9th Cir. 1973) ................................................. 29

*Luber v. Milwaukee Cty.,*
177 N.W.2d 380 (1970) ..................................................... 22

*Mahon v. Ticor Title Insurance Co.,*
683 F.3d 59 (2d Cir. 2012) ................................................... 29

*Martinez v. Newsom,*
46 F.4th 965 (9th Cir. 2022) ................................................ 29

*McClintock v. Thweatt,*
73 S.W. 1093 (Ark. 1903) ................................................... 19

*McIntyre v. Cox,*
229 N.W.2d 613 (Wis. 1975) ................................................ 18

*Newman v. State of Ind.,*
129 F.3d 938 (7th Cir. 1997) ................................................ 13

*Ortiz v. Fibreboard Corp.,*
527 U.S. 815 (1999) ......................................................... 30

*Payton v. County of Kane,*
308 F.3d 673 (7th Cir. 2002) .............................................. 28, 30

*Polizzi v. Cty. of Schoharie,*
720 F. Supp. 3d 141 (N.D.N.Y. 2024) ................................... 9

*R.R. Ret. Bd. v. Alton R.R,*
295 U.S. 330 (1935) ......................................................... 15

*Ritter v. Ross,*
558 N.W.2d 909 (Wis. Ct. App. 1996) .................................. 16, 17, 21, 26

*Sharritt v. Henry,*
No. 23 C 15838, 2024 U.S. Dist. LEXIS 189825
(N.D. Ill. Oct. 18, 2024) ..................................................... 28

*Sikorsky v. City of Newburgh,*
    136 F.4th 56 (2d Cir. 2025) ........................................................ 9

*Smith v. Kentucky,*
    36 F.4th 671 (6th Cir. 2022) ................................................. 10, 12, 13

*Tyler v. Hennepin County,*
    26 F.4th 789 (2022) ................................................................... 17

*Tyler v. Hennepin County,*
    598 U.S. 631 (2023) .......................................................... *passim*

*Vickers v. Trainor,*
    546 F.2d 739 (7th Cir. 1976) ...................................................... 4

*Vigman v. Cmty. Nat'l Bank & Tr. Co.,*
    635 F.2d 455 (5th Cir. 1981) .................................................... 14

*Vivid, Inc. v. Fiedler,*
    497 N.W.2d 153 (Wis. Ct. App. 1993), *aff'd as modified and*
    *remanded,* 512 N.W.2d 771 (1994) ....................................... 24

*W. States Land Reliance Tr. v. Linn Cty.,*
    578 P.3d 1245 (Or. Ct. App. 2025) ............................................ 9

*Will v. Mich. Dep't of State Police,*
    491 U.S. 58 (1989) .................................................................... 9

*Wis. Retired Teachers Ass'n v. Wis. Educ. Ass'n Council,*
    558 N.W.2d 83 (Wis. 1997) ................................................ 22, 25

*Wong v. Wells Fargo Bank,*
    789 F.3d 889 (8th Cir. 2015) .................................................. 29

*Zinn v. State,*
    334 N.W.2d 67 (Wis. 1983) .................................................... 22


## Statutes & Other Authorities:

U.S. Const., Amend. V ......................................................... *passim*

28 U.S.C. § 1367(c) ...................................................................... 7

42 U.S.C. § 1983 ................................................................ *passim*

Fed. R. Civ. P. 23(a) ................................................................. 28

Wis. Stat. § 32.01(2) ................................................................ 24

Wis. Stat. § 32.06(2) ............................................................... 25

Wis. Stat. § 32.07 ................................................................... 25

Wis. Stat. § 32.10 ................................................... 23, 24, 25

Wis. Stat. § 70.60(1) ............................................................. 27

Wis. Stat. § 75.16 ................................................................... 27

Wis. Stat. § 75.36 ................................................... 21, 26, 27

Wis. Stat. § 177.0610 ............................................................ 14

Wis. Stat. § 846.16(2m)(am) ............................................... 19

Wis. Stat. § 846.162 ............................................................. 19

Wis. Stat. § 893.51 ................................................................ 14

Wis. Stat. § 893.53 ......................................................... 13, 14

Wis. Stat. § 893.93(1m) ........................................................ 15

Wis. Stat. § 990.01(27) ......................................................... 24

Wis. Stat. Chapter 32 .......................................................... 24

Argument

I. **The District Court Erred by Declining to Abstain from Deciding Plaintiffs' Federal Takings Claim Before Determining Whether Plaintiffs had a State-Law Vehicle to Vindicate their Rights.**

The State and Counties argue that *DeVillier v. Texas*, 601 U.S. 285 (2024) does not warrant abstention. *See* State Br. 31–38; Counties Br. 15–21. The State also argues there was no "parallel state-court case" that existed warranting abstention. *See* State Br. 30. The City argues that abstention is illogical under *Knick v. Twp. Of Scott*, 588 U.S. 180, 185 (2019). City Br. 9. These arguments misapprehend the procedural posture of this case and the logic of *DeVillier* and *Knick*.

A. *DeVillier*'s Logic Supports Abstention Here.

The State and Counties argue that *DeVillier* does not support abstention. *See* State Br. 31–38; Counties Br. 15–21. The State also contends that *DeVillier* involved only a claim against a State and is distinguishable because there are county defendants here. State Br. 33–34. These arguments miss the point.

The Counties argue that Plaintiffs' state-law causes of action are under the Wisconsin constitution, not the federal Takings Clause. Counties Br. 18. But *DeVillier* did not require the state-law cause of action itself to arise "under" the federal Takings Clause. Rather, it asked whether there was a

state-law vehicle that could "vindicate" the plaintiffs' "rights under the Takings Clause." 601 U.S. at 292.

If Plaintiffs were to recover on their state-law claims under the Wisconsin constitution, their federal constitutional rights under the Takings Clause would be vindicated—which is exactly what *DeVillier* contemplates as a scenario in which it is imprudent to answer whether a direct cause of action under the federal Takings Clause exists. The Court reasoned that federal courts should not assume that state courts will refuse to honor the Constitution, including the Takings Clause. *Id.* at 293.

That reasoning applies with full force here, because the claim in this case is against the State, the Counties, and the City. The presence of county and city co-defendants does not change the fundamental question: whether the federal courts should decide whether a direct cause of action exists under the Fifth Amendment before determining whether a state-law vehicle to vindicate the plaintiffs' rights is available.

Indeed, abstention is *especially* compelling here, because the novel state-law question is actively disputed. Unlike in *DeVillier*, where Texas stipulated to allowing a state-law claim to proceed, here Defendants contend all state-law claims are barred. That dispute creates the uncertainty that *DeVillier* counsels to resolve before reaching the federal constitutional question of whether a direct cause of action under the Fifth Amendment exists. Either (1)

the state courts will conclude Plaintiffs do have a state-law vehicle, rendering the federal question unnecessary, or (2) the state courts will conclude that no vehicle exists, at which point the federal courts would be properly positioned to address whether a direct cause of action under the Fifth Amendment exists.

### B. Now and at the Time of Dismissal, a Parallel State Proceeding Existed.

The State's argument that a parallel state-court case does not exists overlooks the procedural history of this case, which was originally filed in state court, and after removal, Plaintiffs sought remand of the state-law claims to state court. A-16–17. The District Court's error lies in the order of operations: the District Court should have first remanded the state-law claims and then abstained on the federal claim pending state-court resolution. Instead, the District Court dismissed Plaintiffs' federal claim on the merits and *then* remanded the state-law claims. That sequencing denied what *DeVillier* contemplated: first resolving whether a state-law vehicle exists to vindicate Plaintiffs' rights before answering whether a direct cause of action exists under the Fifth Amendment.

Indeed, the now-remanded state law proceeding is a parallel proceeding involving the same parties, the same underlying facts, and the same fundamental question—whether Plaintiffs have a state-law vehicle to

vindicate their takings rights. This is precisely the situation in which abstention is appropriate. *See Vickers v. Trainor*, 546 F.2d 739, 744–45 (7th Cir. 1976) (abstention appropriate "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law") (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976)).

### C. Plaintiffs Did Not Ask the Federal Court to Abdicate Jurisdiction Over the Federal Claim.

The State contends Plaintiffs "wanted not abstention but for the federal court to abdicate jurisdiction over the entire case and remand it to state court." State Br. 22. That is incorrect. Plaintiffs asked the District Court to remand the *state-law claims* and retain the federal claim, deciding it only if the state courts concluded that no state-law vehicle existed to vindicate Plaintiffs' rights. *See* ECF 16 at 10–11; Appellants' Br. 13–27.

In other words, Plaintiffs proposed that the federal court hold the federal claim in abeyance—the essence of abstention—not that it relinquish jurisdiction altogether. The District Court found that Plaintiffs' state-law claims "raise novel issues of state law best addressed in state court." A-16. Having identified those state-law questions as novel, the District Court erred by not following through with the logical next step: allowing the state courts

to address them before answering whether a direct cause of action exists under the federal Takings Clause.

### D. *Knick* Does Not Foreclose Abstention.

The City argues that *Knick v. Township of Scott*, 588 U.S. 180 (2019), prevents abstention. City Br. 9. But *Knick* addressed when a plaintiff may bring a claim under 42 U.S.C. § 1983—holding that a plaintiff need not first seek compensation in state court before suing under § 1983. *Knick*, 588 U.S. at 185. The *Knick* court did not address when a court should decide whether a direct cause of action exists under the Takings Clause, which is the distinct question presented by *DeVillier* and in this case. The two rules are entirely compatible: a plaintiff need not exhaust state remedies before bringing a § 1983 action (*Knick*), but before deciding whether a *direct* cause of action exists under the Fifth Amendment, a court should first satisfy itself that no state-law vehicle exists to vindicate the plaintiffs' rights (*DeVillier*). Because Plaintiffs do not sue under § 1983, *Knick*'s holding about § 1983 exhaustion is inapplicable.

### E. *Hawaii Housing Authority* and *Examining Board* are Distinguishable.

The Counties cite *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 238 n.4 (1984), for the proposition that "[a]bstention is not required for interpretation of parallel state constitutional provisions." Counties Br. 17. But *Hawaii Housing Authority* did not involve the unique question presented

in *DeVillier* and in this case: whether a direct cause of action exists under the Takings Clause.

Plaintiffs' argument would not, as the Counties suggest, require abstention "whenever a plaintiff seeks relief under both the state and federal constitutions." Counties Br. 21. The abstention Plaintiffs seek applies only in the narrow circumstance in which the plaintiffs assert a direct cause of action under the federal Takings Clause, and the parties dispute novel issues of state law regarding whether a state-law vehicle exists to vindicate the plaintiffs' rights. Here, the state-law vehicle just happens to be the Wisconsin constitution. Plaintiffs are not seeking any blanket rule related to claims involving both state and federal constitutions. Abstention in this unique context does not "convert abstention from an exception into a general rule." *Cf. Examining Bd. of Eng'rs, Architects and Surveyors v. Flores de Otero*, 426 U.S. 572, 598 (1976).

Similarly, *Examining Board* merely upheld the district court's discretion to retain jurisdiction where the case presented "no novel question" and involved "only the application of settled principles." 426 U.S. at 597. The *Examining Board* court confirmed abstention *could* be appropriate where, as here, the federal claim was "complicated by an unresolved state-law question." *Id.* at 598.

The State also cites the concept of the "*Erie* guess." State Br. 36. Certainly, the District Court *could have* decided the state-law issues itself. The error lies not in whether the federal court has the power to address state-law questions—it does. Rather, the error is that the District Court addressed whether Plaintiffs have a direct cause of action under the federal Takings Clause *without first satisfying itself of the premise* that there is no state-law vehicle to vindicate Plaintiffs' rights. *DeVillier*, 601 U.S. at 292. The District Court skipped the step that *DeVillier* identifies as a prerequisite, and that sequencing error—not any general rule about avoiding state-law questions— is the basis for Plaintiffs' abstention argument.

Indeed, Plaintiffs' argument has always been that, in light of *DeVillier*, the circumstances of this case warrant the District Court declining supplemental jurisdiction under 28 U.S.C. § 1367(c) because the state-law claims are novel and complex and because, in light of *DeVillier*, the state law claims predominate over the federal claim and exceptional circumstances and compelling reasons exist for declining jurisdiction over the federal claim until the state-law claims are resolved. *See* ECF 16, at 3–6. Plaintiffs recognize the District Court could answer the state law questions, but because the District Court found the state-law issues to be novel, it should have first sent those questions to state court and held the federal claim for later, if necessary.

II.   **Plaintiffs Have a Direct Cause of Action Under the Federal Takings Clause Even If § 1983 Is Time-Barred or Otherwise Unavailable.**

Defendants argue that Plaintiffs' claim is effectively a claim under 42 U.S.C. § 1983. *See* Counties Br. 22–29; State Br. 44–49; City Br. 9–10. However, Plaintiffs' claim is brought directly under the Takings Clause, which is available even if § 1983 is unavailable for any reason.

### A. The District Court Erred by Interpreting Plaintiffs' Claim as a § 1983 Claim.

The District Court held that "the plaintiffs' federal claim is really a § 1983 claim" and dismissed the federal claim for falling outside the limitations period for § 1983 claims. A-7. But that conclusion directly contradicts the Amended Complaint, which does not cite § 1983. ECF 15 ¶¶ 234–43. Rather, Plaintiffs expressly pled: "This claim is a direct cause of action under the United States Constitution." ECF 15 ¶ 239.

The City argues, citing *Bieneman v. Chicago*, 864 F.2d 468, 464 (7th Cir. 1988), that a direct cause of action under the Fifth Amendment is "interchangeable" with a § 1983 action. City Br. 9–10. But *Bieneman* predates both *DeVillier* and *Fulton*, and its assumption of interchangeability does not survive those decisions. The *DeVillier* court expressly held open the question of whether a direct cause of action exists. And as the Eleventh Circuit explained in *Fulton*, when the statutory remedy under § 1983 provides "narrower" relief than the Constitution guarantees—as it does when

its limitations period bars a claim that would otherwise be timely—"the constitutionally prescribed remedy remains directly available." 148 F.4th at 1242, 1256.

The City also cites several post-*Tyler* decisions that applied the § 1983 statute of limitations: *Polizzi v. Cty. of Schoharie*, 720 F. Supp. 3d 141, 145 (N.D.N.Y. 2024); *Sikorsky v. City of Newburgh*, 136 F.4th 56, 58 (2d Cir. 2025); *W. States Land Reliance Tr. v. Linn Cty.*, 578 P.3d 1245, 1247 (Or. Ct. App. 2025). City Br. 10. But none of these cases involved a claim brought *directly* under the Takings Clause of the Fifth Amendment, as distinct from a § 1983 action, like Plaintiffs expressly brought here. They are therefore inapposite to the question of what limitations period applies to a claim brought directly under the Takings Clause. Moreover, the Eleventh Circuit's subsequent analysis in *Fulton*—applying state law to determine the limitations period for a Takings Clause claim—represents the most thorough judicial treatment of this precise question and should be followed.

### B. Suing Directly Under the Takings Clause is Available if § 1983 Is Unavailable to Plaintiffs.

Against the State, § 1983 cannot be brought at all as a matter of law, because § 1983 does not authorize claims against states. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). And if this Court holds that the accrual date on Plaintiffs' § 1983 claim is the time of the sale of their

properties rather than the date *Tyler* was issued, then Plaintiffs would be left without a viable § 1983 claim—which is materially the same situation that *Fulton* addressed.

The Counties argue that the existence of a § 1983 remedy—even one that has expired—precludes recognition of a direct cause of action. Counties Br. 22–24. They cite the principle that § 1983 is "a statutory remedy of equal effectiveness." Counties Br. 18 (quoting A-8–9; *Smith v. Kentucky*, 36 F.4th 671, 674 (6th Cir. 2022)). But an *expired* remedy does not have "equal effectiveness." A statutory vehicle that provides a shorter limitations period than the Constitution requires provides *less* protection than the Constitution and therefore is not a substitute for the constitutional remedy. *Fulton*, 148 F.4th at 1256 (holding that because § 1983 is "narrower than the Takings Clause's direct cause of action," the constitutional remedy remains directly available).

### C. *Fulton* Supports Plaintiffs' Position.

The Counties and State argue that *Fulton* is distinguishable because the plaintiff there could not satisfy *Monell*'s "policy or custom" requirement, whereas Plaintiffs here allege a policy or practice. Counties Br. 28–29; State Br. 44–45. But this distinction does not matter for *Fulton*'s fundamental holding. What matters is that § 1983 was unavailable to the *Fulton* plaintiff, just as it would be unavailable to Plaintiffs here unless the Court finds the

claim accrued as of *Tyler*. Indeed, in concluding no state law vehicle was available in *Fulton*, that court reasoned that Georgia's inverse-condemnation statutory claim was time-barred. 148 F.4th at 1236.

Accordingly, whether § 1983 is unavailable because of *Monell* (as in *Fulton*), or because the Court concludes it is time-barred (like the state law claim was barred in *Fulton*), or because it cannot be brought against a state (as against Wisconsin), the result would be the same: § 1983 would not provide a vehicle for Plaintiffs to vindicate their rights, and therefore a direct cause of action under the Takings Clause must be considered (if no state law vehicle exists as well).

The Counties urge this Court to follow *Fulton*'s dissent and hold that no direct cause of action exists. Counties Br. 29–30. But the *Fulton* majority thoroughly explained why the text, history, and structure of the Constitution establish that a litigant may sue directly under the Takings Clause. 148 F.4th at 1238–65. The Takings Clause is unique in the Constitution: it guarantees a monetary remedy in its text, is self-executing, and "is one of only two constitutional guarantees that provides its own remedy" (the other being habeas corpus). *Id.* at 1238. Indeed, the dissent fails to answer what would happen if, hypothetically, Congress repealed § 1983. Would there still be no direct cause of action under the Takings Clause—despite the unique self-executing remedy guaranteed in the Constitution?

### D. *DeVillier* Did Not Foreclose a Direct Cause of Action.

The Counties and the State note that *DeVillier* did not answer whether there is a direct cause of action under the Takings Clause. Counties Br. 16; State Br. 32. True. But *DeVillier* also did not *foreclose* such a cause of action. To the contrary, the Supreme Court observed that "the absence of a case relying on the Takings Clause for a cause of action does not by itself prove there is no cause of action." 601 U.S. at 292. And the Court declined to affirm the Fifth Circuit's holding that no direct cause of action exists, instead vacating that judgment. *Id.* at 293. As Plaintiffs argued in their opening brief, *DeVillier* shows that dismissal of a claim directly under the federal Takings Clause is inappropriate unless a court is presented with a case in which the only potentially viable claim is one directly under the Takings Clause and concludes no such claim exists. Appellants' Br. 31.

### E. The Counties' Reliance on *Smith v. Kentucky* and *Newman* Is Misplaced.

The Counties cite *Smith v. Kentucky*, 36 F.4th 671, 674 (6th Cir. 2022) for the proposition that "the Supreme Court has never recognized a cause of action arising directly under the Constitution in a case where § 1983 was available as a remedy." Counties Br. 23. That qualifier—"where § 1983 was available"—supports Plaintiffs' argument. Here, this Court might conclude that § 1983 is *not* available. Moreover, *Smith* did not involve a claim directly

under the Takings Clause or the question of whether a direct cause of action exists under that unique constitutional provision. *Smith* addressed a different constitutional claim, and its reasoning does not account for the Takings Clause's distinctive character. *See Fulton*, 148 F.4th at 1238.

The Counties also cite *Newman v. State of Ind.*, 129 F.3d 938, 942 (7th Cir. 1997) for the argument that Plaintiffs are stuck with § 1983 only. Counties Br. 22. But *Newman* predates both *DeVillier* and *Fulton*, and like *Smith*, did not involve the Takings Clause. Subsequent to *Newman*, the *DeVillier* court stated: "Our precedents do not cleanly answer the question whether a plaintiff has a cause of action arising directly under the Takings Clause," 601 U.S. at 292. As such, *Newman* cannot foreclose a question the Supreme Court has expressly left open.

## III. The Three-Year Statute of Limitations for § 1983 Claims Does Not Apply to Plaintiffs' Direct Cause of Action Under the Takings Clause.

Defendants argue that a three-year statute of limitations applies under Wis. Stat. § 893.53. Counties Br. 30; State Br. 38–39; City Br. 7, 9–10. This argument fails because it applies the wrong legal framework.

### A. The § 1983 Limitations Period Does Not Govern a Direct Takings Clause Claim.

Defendants argue the three-year limitations period for § 1983 claims under Wis. Stat. § 893.53 applies to Plaintiffs' direct cause of action under the Takings Clause. But the limitations period for § 1983 claims should not

automatically also apply to claims brought directly under the Takings Clause.

As the Eleventh Circuit held in *Fulton*, when a federal claim "lacks an express statute of limitations, we look to 'the forum state's limitations period applicable to the state cause of action that bears the closest substantive resemblance to the federal cause of action.'" 148 F.4th at 1236 (quoting *Vigman v. Cmty. Nat'l Bank & Tr. Co.*, 635 F.2d 455, 459 (5th Cir. 1981)); *see also Andrews v. Heinold Commodities, Inc.*, 771 F.2d 184, 186 (7th Cir. 1985) (explaining that "federal courts must borrow the applicable statute from analogous state law" when no federal statute of limitations is provided).

The *Fulton* court rejected application of the § 1983 limitations period because § 1983 is a "general remedy for injuries to personal rights," while the court was evaluating "a unique cause of action" that "arises directly under the Takings Clause." 148 F.4th at 1237. Applying this reasoning here, the most analogous state cause of action is not a general personal-injury claim under Wis. Stat. § 893.53 (three years), but rather the six-year limitations period for wrongful taking of personal property under Wis. Stat. § 893.51—or no limitations period at all, because there is no statute of limitations to recover funds being wrongfully held by another. *See* Wis. Stat. § 177.0610.

The Counties rely on *Bieneman* for the proposition that "the same statute of limitations applies to actions under § 1983 and claims invoking the

Constitutions directly." Counties Br. 29 (citing 864 F.2d at 467–70). But *Bieneman*'s application of the § 1983 limitations period to a direct constitutional claim was based on judicial economy—to "avoid enervating litigation"—not on a rigorous analysis of which state-law analogue most closely resembles a direct Takings Clause claim. *Bieneman*, 864 F.2d at 470. As Plaintiffs explained in their opening brief, *Bieneman*'s reasoning on this point has been undermined by both *DeVillier* (which left open whether a direct cause of action even exists) and *Fulton* (which held it does and applied an applicable state law limitations period). Appellants' Br. 52–54.

## B. Wis. Stat. § 893.93(1m) Does Not Apply.

The City argues that, even if the § 1983 limitations period does not apply, Wis. Stat. § 893.93(1m) would impose a three-year limitations period. City Br. 14–15. That statute applies to "a liability created by statute when a different limitation is not prescribed by law." Wis. Stat. § 893.93(1m). But Plaintiffs are not suing under a statute; they are suing under the Constitution. "The Constitution is not a statute." *R.R. Ret. Bd. v. Alton R.R.*, 295 U.S. 330, 346 (1935). Accordingly, Wis. Stat. § 893.93(1m) is inapplicable.

## C. Plaintiffs' Accrual Argument Is Not New.

The Counties assert Plaintiffs raise a new argument on appeal by contending their claims accrued as of the *Tyler* decision. Counties Br. 6, n.1. While Plaintiffs' argument is framed slightly differently on appeal, it is not a

new argument. Plaintiffs alleged in their Amended Complaint that "until the United States Supreme Court decided *Tyler v. Hennepin County*, 598 U.S. 631 (2023), Plaintiffs were unable to pursue their claims based on their reasonable reliance on binding Wisconsin case law." ECF 15 ¶ 178.

Plaintiffs also argued in the District Court that, before *Tyler*, under the then-governing case law (*Ritter v. Ross*, 558 N.W.2d 909, 909–10 (Wis. Ct. App. 1996), and *Jensen v. County of Kenosha*, No. 2021AP1212, 2022 Wisc. App. LEXIS 567 (Wis. Ct. App. June 29, 2022)), "Plaintiffs had no authority to pursue their takings claims without risking being sanctioned for bringing frivolous claims" but that "[o]nce *Tyler* was decided, effectively overruling *Ritter* and *Jensen*, Plaintiffs obtained the authority to bring their claims." *See* ECF 28 at 50.

This is substantially similar to the accrual argument Plaintiffs make on appeal. *See* Appellants' Br. 54 ("Plaintiffs did not have a complete and present cause of action, such that they could file suit and obtain relief, until the *Tyler* case was determined. Before that, the governing case law, as evidenced by *Ritter*, was that Wisconsin's tax-foreclosure surplus-funds retention scheme was perfectly constitutional.").

The State argues that Plaintiffs were in the same position that Ms. Tyler was in before *Tyler* was decided and therefore could have brought their claims earlier. State Br. 37–38. But the State fails to acknowledge the critical

Appellants' Reply Brief

16

distinction: in Wisconsin, the *Ritter* and *Jensen* cases firmly established—incorrectly—that the surplus-retention practice was constitutional. The State cites no similar precedent that existed in Minnesota before Ms. Tyler brought her claim—because none exists.

### D. Plaintiffs Retain an Interest in Their Surplus Proceeds, and the Taking Is Temporary and Ongoing.

The Counties argue that "Plaintiffs lawfully lost title to their properties years ago" and that because Plaintiffs lost title, they cannot claim ownership of the surplus proceeds. Counties Br. 38. But property ownership involves more rights than merely fee simple title. For example, one can convey fee simple ownership of lands and retain an easement or other appurtenant rights, such as hunting rights. Here, Plaintiffs do not contend they still own the lands—they lost title. However, Plaintiffs still own the *surplus proceeds*, because the right to receive such proceeds is a personal right that belonged to them as owners of their real properties and is a right which Defendants did not acquire when foreclosing Plaintiffs' properties.

In *Tyler v. Hennepin County*, 26 F.4th 789, 793 (2022), the Eighth Circuit Court of Appeals incorrectly held that "[w]here state law recognizes no property interest in surplus proceeds from a tax-foreclosure sale . . . there is no unconstitutional taking." The Supreme Court unanimously overruled that holding, explaining as follows:

Historically, Minnesota also recognized that a homeowner whose property has been sold to satisfy delinquent property taxes had an interest in the excess value of her home above the debt owed. But in 1935, the State purported to extinguish that property interest by enacting a law providing that an owner forfeits her interest in her home when she falls behind on her property taxes. This means, the County reasons, that Tyler has no property interest protected by the Takings Clause.

History and precedent say otherwise. The County had the power to sell Tyler's home to recover the unpaid property taxes. But it could not use the toehold of the tax debt to confiscate more property than was due.

598 U.S. at 638–39 (citations omitted). *See also Howard v. Macomb County*, 133 F.4th 566, 569 (6th Cir. 2025) ("[T]he State may keep the proceeds of a foreclosure sale to the extent they cover the tax debt. . . . But any residual after that *belongs to the property owner*, *not the State*.") (emphasis added).

The property interest that Plaintiffs retain in the surplus funds, pursuant to *Tyler*, is a personal property interest under Wisconsin law. A landowner's interest in the proceeds from the sale of land is a personal property interest that can be inherited, assigned, sold, optioned, or otherwise exchanged, just like any other personal property interest. For example, in *McIntyre v. Cox*, a landowner assigned her son a future interest in the profits from the sale of land without conveying any interest in the land itself. 229 N.W.2d 613, 616–17 (Wis. 1975). The son sued to enforce the assignment. *Id.* The court treated the interest in the profits from the sale as personal property, separate and independent from the real estate. *Id.* at 617 (affirming plaintiff "did not

retain any interest in the land, but only an interest in the proceeds"); *see also, e.g., McClintock v. Thweatt*, 73 S.W. 1093 (Ark. 1903) (holding agreement to split profits from sale of land is not an interest in the land).

A landowner's personal property interest in the proceeds from the sale of the land is equally well established under the law of land contracts. In a land contract, the vendor sells the land in exchange for payment from the vendee over time, i.e., seller financing. The vendor's right to receive those payments is a personal property right. "A vendor's interest in a land contract is personalty," even though the vendor still "holds the bare legal title" to the real estate until the full purchase price is paid. *In re Estate of Fischer*, 126 N.W.2d 596, 599 (Wis. 1964). As such, the conveyance of a right to proceeds (personal property) can be distinct from the conveyance of title to the land.

Mortgage foreclosure law similarly recognizes the personal property interest in surplus proceeds from an involuntary sale forced by a creditor—distinct from title to the land. Upon confirmation of a mortgage foreclosure sale, the clerk of court pays the proceeds of the sale to the parties entitled to them, *see* Wis. Stat. § 846.16(2m)(am), according to a claims process under Wis. Stat. § 846.162, which allows the property owner (or other creditors of the property owner) to assert their respective interests in the surplus funds.

The critical point is this: when Defendants acquired title to Plaintiffs' real property by tax deed, Plaintiffs did not forfeit—and Defendants did not

acquire—Plaintiffs' personal property interest in the right to receive the surplus proceeds that would later be generated by the sale of that real property. A landowner's interest in the proceeds from the sale of the land is a personal property interest, separate and apart from fee simple title. *Tyler* holds Plaintiffs retained that interest. As such, Defendants' possession of Plaintiffs' funds is a wrongful, ongoing, temporary taking which Plaintiffs are seeking to end by getting their money back, and Plaintiffs also seek just compensation for the time-value of Defendants' possession of their funds.

### E. *Howard v. Macomb County* Is Distinguishable.

The State relies on *Howard v. Macomb County*, 133 F.4th 566 (6th Cir. 2025), to argue Plaintiffs' claims are time-barred. State Br. 47–48. But *Howard* is distinguishable on a fundamental ground: it involved two legitimate forfeitures of property, while this case involves one legitimate forfeiture and one unconstitutional taking. In *Howard*, a landowner legitimately forfeited her interest in land due to nonpayment of property taxes, and then she legitimately forfeited her interest in the surplus funds from the sale of the land by failing to comply with the statutory procedures for receiving the funds. 133 F.4th at 572.

In this case, Defendants acquired legitimate fee simple interests in Plaintiffs' lands through forfeiture but also held illegitimate, unconstitutional possessory interests in Plaintiffs' surplus funds by providing no process for

returning the funds. *See Chicago, B. & Q.R. Co. v. City of Chicago*, 166 U.S. 226, 241 (1897) (holding state action, "even if it be authorized by statute, whereby private property is taken for the state . . . without compensation made or secured to the owner, is, upon principle and authority, wanting in the due process of law.").

Here, at the time Plaintiffs' properties were taken and sold, there was *no* state-law procedure for obtaining the surplus. Former Wis. Stat. § 75.36 expressly barred recovery of surplus proceeds, and the *Ritter* and *Jensen* decisions confirmed (incorrectly) that constitutional law did not require otherwise. Unlike the plaintiff in *Howard*, Plaintiffs here did not forfeit their interest in the surplus funds by failing to follow the procedure for claiming them because Plaintiffs had no state-law procedure to follow to claim the funds. Nothing in *Howard* conflicts with the holding in *Tyler* that the Constitution requires "that the excess value be returned to the taxpayer," which is precisely the relief Plaintiffs seek here. 598 U.S. at 642.

## IV. Sovereign Immunity Does Not Bar Plaintiffs' Federal Takings Claim Against the State.

The State argues that sovereign immunity bars Plaintiffs' federal takings claim. State Br. 54–59. This argument fails because the Takings Clause is a self-executing waiver of sovereign immunity, especially here, where the State provides no available state-law remedy.

### A. The Takings Clause Is a Self-Executing Waiver of Sovereign Immunity under Wisconsin Law.

The State has no sovereign immunity from takings claims under Wisconsin law, because the takings clause "is self-executing and needs no express statutory provision for its enforcement" as "just compensation following a taking 'is a constitutional necessity rather than a legislative dole.'" *Zinn v. State*, 334 N.W.2d 67, 76 (Wis. 1983) (quoting *Luber v. Milwaukee Cty.*, 177 N.W.2d 380, 383 (1970)). "[S]overeign immunity will not bar recovery for a taking" because the takings clause "is a self-executing constitutional waiver of sovereign immunity." *Wis. Retired Teachers Ass'n v. Wis. Educ. Ass'n Council*, 558 N.W.2d 83, 95 (Wis. 1997); *see also Fazio v. Dep't of Emple. Tr. Funds*, 645 N.W.2d 618, 628 (Wis. Ct. App. 2002) (stating takings clause "is a self-executing waiver of sovereign immunity.").

### B. The Federal Takings Clause Is Also a Self-Executing Waiver of Sovereign Immunity for Claims Brought Directly Under the Fifth Amendment.

Like under state law, sovereign immunity cannot bar a claim for just compensation brought against a state directly under the Takings Clause of the Fifth Amendment when the state's courts are not open to hear the just compensation claim. The self-executing nature of the Takings Clause—a unique feature among constitutional provisions—compels this conclusion.

The Supreme Court recognized in *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 316 n.9 (1987), that "it is the Constitution that dictates the remedy for interference with property rights amounting to a taking." The Takings Clause is, along with habeas corpus, one of only two constitutional provisions that provides its own remedy in its text. *See Fulton*, 148 F.4th at 1238. Further, the Takings Clause is "self-executing." *Knick*, 588 U.S. at 194.

Here, the State argues that sovereign immunity bars both Plaintiffs' state and federal claims. If sovereign immunity is upheld under both state and federal law, Plaintiffs will have no avenue to enforce the constitutional guarantee of just compensation that *Tyler* unanimously confirmed they possess. The Takings Clause cannot be read to create a right to just compensation while simultaneously permitting the State to invoke sovereign immunity to prevent enforcement of that right in every available forum.

### C. The State Has Not Identified Any Available Procedure for Plaintiffs to Recover Their Surplus Funds.

The State argues it may invoke sovereign immunity "so long as state courts remain open" and so long as the "state provides its own remedy." States Br. 57, n.12. The State also argues that Plaintiffs could have pursued Wis. Stat. § 32.10 (the inverse condemnation statute) or a claim under Wisconsin's Administrative Procedure Act. State Br. 58. However, neither of

these statutes constitute a remedy for which the state courts were open for Plaintiffs, and as such, the State may not invoke sovereign immunity.

Chapter 32 of the Wisconsin Statutes applies only to "estates in lands, fixtures and personal property directly connected with lands." Wis. Stat. § 32.01(2). Money is personal property. Wis. Stat. § 990.01(27). Money is not connected to anything. It just sits in a bank account. Indeed, the money at issue in this case originated from third parties purchasing lands, swapping one asset (money) in exchange for a separate asset (land).

In other words, the money a buyer exchanges for land is not "directly connected" with the land the buyer purchases. The meaning of "personal property directly connected with lands" means physically connected. For example, in *Vivid, Inc. v. Fiedler*, "outdoor advertising signs located adjacent to Interstate Highway 90" were "personal property directly connected with lands." 497 N.W.2d 153, 155–56 (Wis. Ct. App. 1993), *aff'd as modified and remanded*, 512 N.W.2d 771 (1994).

Moreover, it would defy logic to apply Wis. Stat. § 32.10 to a government taking of money. In a claim brought under Wis. Stat. § 32.10, "[i]f the court determines that the defendant is occupying such property of the plaintiff without having the right to do so, it shall treat the matter in accordance with the provisions of this subchapter," which governs condemnation of real property. In other words, the result of a successful inverse condemnation

claim under Wis. Stat. § 32.10 is that the parties then proceed under the procedures for the condemnation of real property. That would be nonsensical in the case of money, given the obligation to pay just compensation.

It would never make logical sense for the government to condemn, for example, $417,277.21 from Plaintiff Steven Skarban because the State would immediately have to pay Mr. Skarban $417,277.21 as just compensation. Similarly, there could be no "necessity" determination under Wis. Stat. § 32.07, because it would never be necessary for the government to use eminent domain to exchange like-for-like dollars with a citizen. Nor would it make sense to perform an appraisal as required by Wis. Stat. § 32.06(2), because the appraisal of the U.S. dollars would always equal the amount of U.S. dollars being condemned.

Further, the Administrative Procedures Act governs challenges to agency decisions and has no application here, where the relevant conduct is the retention of surplus funds pursuant to a statutory scheme, not a discrete agency decision subject to administrative review.

The fact that these statutes do not apply are why, for example, other cases involving the wrongful taking of money by the government were resolved through direct actions under the Wisconsin constitution, not under Wis. Stat. § 32.10 or the Administrative Procedures Act. *See Wis. Retired Teachers Ass'n v*, 558 N.W.2d 83 (holding state statute which diverted plaintiffs' funds

violated takings clause and holding remedy was directly under takings clause); *see also Fazio v. Dep't of Emple. Tr. Funds*, 645 N.W.2d 618, 628 (Wis. Ct. App. 2002) (holding State agency's retention and use of funds violated takings clause and holding remedy was directly under takings clause).

Ultimately, the statute that governed the process for Plaintiffs' remedies for their takings was former Wis. Stat. § 75.36, and that statute was unequivocally clear that Plaintiffs had no process—there was no way for Plaintiffs to recover their surplus funds. No other statute provides a separate mechanism for Plaintiffs to do so, either, because the governing statute, Wis. Stat. § 75.36, already spoke to the issue and said "no." And the Wisconsin courts were closed to claims that Wis. Stat. § 75.36 were unconstitutional, per *Ritter* and *Jensen*. Accordingly, the State failed to provide Plaintiffs with any remedy in state court, and as such, the State cannot now also assert sovereign immunity.

## V.    Plaintiffs Have Stated Claims Against the State of Wisconsin.

The State argues Plaintiffs have not alleged sufficient conduct by the State to support their claims. State Br. 59–64. Plaintiffs have thoroughly rebutted this argument in prior briefing, *see* ECF 28 at 67–75, and incorporate those arguments here.

In brief: Plaintiffs allege the State enacted and upheld the statutory scheme (former Wis. Stat. § 75.36) that required the Counties and the City to retain surplus proceeds. ECF 15 ¶¶ 193–94. Plaintiffs allege the State received surplus proceeds directly, under Wis. Stat. § 70.60(1). *Id.* ¶¶ 105, 111, 116, 121, 126, 131, 136, 138. And Plaintiffs allege the State has failed to provide any mechanism for recovering just compensation. *Id.* ¶ 196. These allegations adequately state a claim against the State. While the State argues this case is "primarily" against the Counties and that the claims against the State are "secondary," *see* State Br. 33, that is untrue—the State puppet-mastered the entire scheme.

In fact, the State previously acknowledged a superior government such as the State *can* be held liable when its inferior entity acts "as the government's agent" or when the superior government's "influence" over the inferior entity was "coercive rather than merely persuasive." ECF 24, at 27, n.6. That is precisely the situation here. The State obligated its co-Defendants to take Plaintiffs' properties "*in the name of the state of Wisconsin*" and "*for and on behalf of [the] state.*" Wis. Stat. § 75.16 (emphasis added). *See Jackson Cty. v. State Dep't of Nat. Res.*, 717 N.W.2d 713, 724 (Wis. 2006) ("[C]ounties must act in conformity with the letter and spirit of statewide law."). *See also* ECF 28 at 67–75 (addressing the case law cited by the State).

## VI.   The Juridical Link Doctrine Applies.

The Counties and City argue Plaintiffs lack standing to sue defendants with whom they did not have direct contact. Counties Br. 47–49; City Br. 15–16. But the juridical link doctrine, as adopted by this Court in *Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002), squarely permits such claims. Plaintiffs allege all Defendants acted pursuant to a single statutory scheme and engaged in the same conduct. ECF 15 ¶¶ 167–70. This is precisely the type of "juridical link" that *Payton* recognized. *See also Sharritt v. Henry*, No. 23 C 15838, 2024 U.S. Dist. LEXIS 189825, at *28 (N.D. Ill. Oct. 18, 2024) (applying *Payton* in analogous *Tyler*-based surplus-proceeds case against multiple Illinois counties).

The Counties and the City ask this Court to revisit *Payton* based on out-of-circuit case law. Counties Br. 49; City Br. 16. The Court should reject that invitation. The juridical link doctrine is sound and logical in cases like this one, where all Defendants acted pursuant to a mandatory statutory scheme. Rule 23 itself envisions that parties may "be sued" as a class, Fed. R. Civ. P. 23(a), and there are undoubtedly absent class members with claims against the Counties and the City, even if no named Plaintiff has a direct claim. In any event, the proper time to evaluate those class claims is after class certification, not at the motion-to-dismiss stage.

The out-of-circuit cases cited by Defendants—e.g., *Wong v. Wells Fargo Bank*, 789 F.3d 889, 896 (8th Cir. 2015), and *Mahon v. Ticor Title Insurance Co.*, 683 F.3d 59, 63-66 (2d Cir. 2012)—are inapposite because they were not challenging statutes which governmental entities were *required* to implement uniformly across their jurisdiction. This logic is reinforced by *Martinez v. Newsom*, 46 F.4th 965, 971 (9th Cir. 2022), another decision Defendants rely on. The *Martinez* court's narrow reading of *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir. 1973) as confined to suits against "officials of a single state and its subordinate units of government" applying a "common rule" does not undermine application of the juridical link here.

Indeed, in *La Mar*, the court confined the juridical link exception to plaintiffs suing "officials of a single state and its subordinate units of government" who applied a "common rule." 489 F.2d at 470. The court cited as historical examples suits against prison officials enforcing a Pennsylvania law requiring segregated jails, suits against officials enforcing Alabama's vagrancy statute, and suits against officials enforcing a state regulation requiring higher tuition based on out-of-state residence. *See id.* at 469–70. All these suits involved state officials enforcing mandatory rules. Here, Plaintiffs sue the Counties and the City—subordinate units of the State— implementing the State's uniform tax foreclosure statute, precisely fitting *La Mar*'s original framework.

While the court in *Fox v. Saginaw Cty., Michigan*, 67 F.4th 284 (6th Cir. 2023) rejected the juridical link doctrine based on standing, this Court in *Payton* has already analyzed standing under the juridical link doctrine and rightly concluded it is consistent with Article III because "the class as a whole" has standing against each of the Defendants. 308 F.3d at 678–81. The *Payton* court relied on *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), which is still good law.

## Conclusion

For the foregoing reasons, the Court should *reverse* and *remand* with instructions to the District Court to abstain from determining Plaintiffs' federal law claim until state courts resolve Plaintiffs' state-law claims.

Dated this April 1, 2026.

ZIMMER & RENS LLC

*/s/ Paul W. Zimmer*
Paul W. Zimmer
Wisconsin Bar No. 1100020
Paul.Zimmer@zrlawyers.com
15850 W. Bluemound Rd., Ste. 204
Brookfield, WI 53005
Phone: (414) 296-6225
Fax: (414) 296-6165

MILBERG PLLC

Leland Belew
Illinois Bar No. 6331809
LBelew@milberg.com
227 West Monroe St., Ste. 2100
Chicago, IL 60606
Phone: (865) 247-0080
Fax: (865) 522-0049

*Counsel for Plaintiffs-Appellants and the Proposed Plaintiff-Appellant Class*

## Certificate Of Compliance

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32(c) because it contains 6,929 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) and Circuit Rule 32(b) because it was prepared using in 13-point Century Schoolbook font, a proportionally spaced typeface.

Dated:  April 1, 2026 

ZIMMER & RENS LLC

*/s/ Paul W. Zimmer* 

Paul W. Zimmer

*Counsel for Plaintiffs-Appellants and the Proposed Plaintiff-Appellant Class*

# CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2026, the Reply Brief of Plaintiffs-Appellants was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


/s/ Paul W. Zimmer
Paul W. Zimmer
*Counsel for Plaintiffs-Appellants*